The Honorable Robert J. Bryan

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

RICHARD MARSCHALL,

Defendant.

NO. CR20-5270 RJB

**GOVERNMENT'S TRIAL BRIEF**

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and Marie M. Dalton and Nicholas Manheim, Assistant United States Attorneys, respectfully submits this Trial Brief.  Trial is scheduled to begin on August 2, 2021.

## I.     SUMMARY OF THE CASE

### A.  The Defendant's Background

Defendant Richard Marschall is a former naturopathic physician (N.D.) who was twice convicted in United States District Court of Introduction of a Misbranded Drug into Interstate Commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).  In 2011, the Defendant admitted that he distributed Human Chorionic Gonadtropin (HCG), a drug

TRIAL BRIEF
*United States v. Marschall - 1*

approved to treat infertility, distributing it as a weight loss drug.[1]  In committing that offense, the Defendant imported HCG from India, providing this drug to patients whom the Defendant had only consulted with over the telephone.  When questioned regarding the importation of HCG, the Defendant lied to an FDA official, claiming he was an endocrinologist and used HCG to treat infertile patients.  After this conviction, the Defendant's naturopathy license was suspended by the Washington Department of Health.

In 2017, the Defendant was again convicted of Introduction of Misbranded Drugs into Interstate Commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2).  Despite his prior conviction, the Defendant again sold HCG to approximately sixty patients to promote weight loss.[2]  After the second conviction, in 2018, the Washington Department of Health permanently revoked his credential as a naturopathic physician.  Additionally, an Agreed Order and Judgment was entered in the Thurston County Superior Court, permanently enjoining the Defendant from practicing naturopathic medicine and representing himself to be a naturopath—including by using the titles "'Doctor', 'ND', 'naturopath', or any similar title."[3]

## B.  The Defendant Distributes the Dynamic Duo to Treat, Prevent, and Cure COVID-19 and Other Ailments

Beginning in March 2020, as COVID-19 was spreading globally and throughout Washington State, the Defendant again introduced misbranded drugs into interstate commerce.  Despite having his naturopathy credential revoked, the Defendant posted on Facebook that he had developed a product, known as the "Dynamic Duo," that could treat or cure COVID-19, along with other viruses and medical conditions.  Specifically, on Facebook, the Defendant claimed that the products Allimed (garlic extract) and IAG

---

[1] *See United States v. Marschall*, CR 11-5222 BHS, (W.D. Wa. 2011)  ECF No. 7, Plea Agreement at 4-6.
[2] *See United States v. Marschall*, CR 17-5226 RBL, (W.D. Wa. 2017) ECF No. 8, Plea Agreement at 4-5.
[3] *Washington State Department of Health v. Richard A. Marschall*, No. 18-2-00809-34, (Wa. Sup. Ct. 2018), Agreed Upon Order and Judgment.

TRIAL BRIEF
*United States v. Marschall* - 2

Arabinogalactans (larch tree starch) could "***prevent or treat*** viral, bacterial, fungal, and parasitic infections." (emphasis added). The Defendant also claimed that these two products:

> [C]an boost the immune system so it can fight for you but ***even more importantly*** while your immune system is being strengthened, ***can crush***, 30 different viral infections including those in the Corona family like in China, 40 different bacterial infections, 25 different fungal infections and 20 different parasitic infections like amoeba.

(emphasis added).

In addition, the Defendant's wife, Rose Marschall, also posted claims on her Facebook, instructing individuals to call her husband to purchase the Dynamic Duo products. Based on her Facebook posts, along with other information learned during the course of this investigation, Rose Marschall appears to promote her husband's practice, advertising his treatments, and drumming up business for his practice. For example, on March 21, 2020, Rose Marschall posted the following on Facebook: "The Dynamic Duo knocked out my very bad cough/cold in February. ***Corona?*** Want info? Call [the Defendant's telephone number]." (emphasis added). Additionally, Rose Marschall responded to others' posts, again advertising her husband's products. For example, on March 24, 2020, T.W. claimed on Facebook that the United States could be the next epicenter of the COVID-19 pandemic and noted that there was no vaccine or medication to fight the virus. In response, Rose Marschall replied "***there are two products that may be able to stop this.*** Call and talk to Rick about what we are calling the Dynamic Duo: [listing the Defendant's telephone number]." (emphasis added).

In response to these posts, a number of concerned citizens, including Karen Hogan and Steve Koehler, contacted the U.S. Attorney's Office, complaining that the Defendant was peddling an unproven COVID-19 treatment despite having his naturopathy license revoked. After receiving these complaints, and reviewing these Facebook posts, on March 30, 2020, an undercover FDA agent contacted the Defendant, recording their telephone call. On this call, the Defendant again advised the undercover agent that the

TRIAL BRIEF
*United States v. Marschall - 3*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Dynamic Duo products could prevent, cure, or treat COVID-19.  Specifically, the Defendant told the agent: "Allicin doesn't boost the immune system, *it just kills the virus*." (emphasis added).  The Defendant explained:

> You buy it and you leave and you walk away … You know if you have evidence that you're getting sick how does it show up?  …. You know its its ah the cough keeps coming on right?  *Or your temperature goes up, in this case with the Covid.*  With the regular flu your temperature might not go up very fast.  *With this one it seems to go up faster.*  And the cough, and *then this this new virus this you know it's hitting people.*  It's going right to their right to their lungs and you know deep in their lungs.  It's not like you know just bronchitis its pneumonia.  You know it's killing people quickly.

Immediately after describing the deadly nature of COVID-19, the Defendant then stated "*here's what I can do*," proceeding to sell the undercover agent the Dynamic Duo products.  In doing so, the Defendant claimed that "unfortunately, because everybody wants the stuff, you know, there's—there's a bit of a wait."

The following day, the Defendant called the undercover agent back, advising her that he was able to obtain the Dynamic Duo products.  In response, the agent purchased these products for $140 plus shipping.  The Defendant shipped the products in interstate commerce, from Port Angeles, Washington, to the undercover agent in Oakland, California.  In addition to the bottles, the package also contained several written statements by the Defendant, including a document titled "BE PREPARED," which again claimed that the products "can crush 30 different viral infections, *including those in the Corona family, (like in China Corona-19),* 40 different bacterial infections, 25 different fungal infections and 20 different parasitic infections like amoebas."  The package also contained a document titled "The Dynamic Duo Instructions," noting that the products were "For *Treatment* Only," and advising the user to take them "at the VERY FIRST SIGN of flu or cold like symptoms," including "a cough, a sneeze, a sore throat, a runny nose that is NOT allergy related."  (emphasis added).  Additionally, on several of the documents accompanying the pills, the Defendant listed his name as "Rick Marschall,

TRIAL BRIEF
*United States v. Marschall* - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

N.D." For example, he listed this name and title on the documents entitled "The Dynamic Duo Instructions," and "Preparing for Viral Infections with Plant Medicines Since Antibiotics Can't Help: Introducing the 'Dynamic Duo.'" Additionally, the Defendant listed his name as "Rick Marschall ND" on an email sent to the undercover agent on March 31, 2020.

Based on this conduct, on April 29, 2020, a Complaint was filed, charging the Defendant with Introduction of Misbranded Drugs into Interstate Commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2). Dkt. 1. On August 5, 2020, an Indictment was filed, charging the Defendant with the same offense, alleging that the Dynamic Duo products were drugs that were misbranded in four ways:

(1) The labeling accompanying the Dynamic Duo products was false and misleading in some particular, in that it suggested that RICHARD MARSCHALL was a naturopathic doctor by listing him as "Rick Marschall N.D.";

(2) The Dynamic Duo products were prescription drugs and the drugs were dispensed without a prescription;

(3) The labeling accompanying the Dynamic Duo products failed to bear adequate directions for use because the Dynamic Duo products were prescription drugs because the Dynamic Duo products' method of use, and the collateral means necessary for their use, rendered them not safe for use except under the supervision of a licensed practitioner; and

(4) The Dynamic Duo products were manufactured, prepared, propagated, compounded and processed in establishments not registered with the Food and Drug Administration, and the Dynamic Duo products were not included in any list of drugs manufactured, prepared, propagated, compounded, and processed in a registered establishment.

Dkt. 38.

## II.    ELEMENTS OF THE OFFENSE

**A.    Introduction of Misbranded Drugs into Interstate Commerce**

In Count One, the Defendant is charged with Introduction of Misbranded Drugs into Interstate Commerce, in violation of Title 21, United States Code Sections 331(a) and 333(a)(2).  The elements of that offense are as follows:

(1) The Defendant introduced or caused the introduction of the Dynamic Duo products into interstate commerce;

(2) The Dynamic Duo products were drugs;

(3) The Dynamic Duo products were misbranded; and

(4) The Defendant committed the offense after a previous conviction of him under Title 21, Section 333(a)(2) had become final.

In proving that the Dynamic Duo products were misbranded, the government will show:

(1) the Dynamic Duo products' labeling was false and misleading in some particular, in that it suggested that the Defendant was a naturopathic doctor by listing him as "Rick Marschall N.D.";

(2) The Dynamic Duo products were prescription drugs, and the drugs were dispensed without a prescription;

(3) The Dynamic Duo products' labeling failed to bear adequate directions for use because the drugs were prescription drugs because the drugs' method of use, and the collateral means necessary for their use, rendered them not safe for use except under the supervision of a licensed practitioner; or

(4) The Dynamic Duo products were not included in any list of drugs manufactured, prepared, propagated, compounded, and processed in a registered establishment.[4]

---

[4] Although the Indictment charged two unique registration violations, for simplicity, at trial the government intends only to prove one of the registration violations:  that the products "were not included in any list of drugs manufactured, prepared, propagated, compounded, and processed in a registered establishment."

TRIAL BRIEF
*United States v. Marschall* - 6

1

2                          **III.    LEGAL ISSUES**

3   **A.    Elements of Charged Offense**

4           The Defendant is charged with one count of Introduction of Misbranded Drugs

5   into Interstate Commerce in violation of 21 U.S.C. § 331(a) and 333(a)(2).  Section

6   331(a) prohibits "the introduction or delivery for introduction into interstate commerce of

7   any . . . drug . . . that is . . . misbranded."  Section 333 establishes two tiers of penalties

8   for such misbranding, a misdemeanor offense in § 333(a)(1) and a felony offense in

9   § 333(a)(2).  For a person to be convicted of the felony offense, he must commit the acts

10  prohibited under § 333(a) and also meet one of two other requirements.  Either the person

11  must violate § 333(a) with "the intent to defraud or mislead," or the person must violate

12  § 333(a) "after a conviction of him under this section has become final."  Here, the

13  Defendant is charged under the second of these requirements because he has twice been

14  convicted of committing the same crime, first in 2011 and again in 2017.  The

15  government has submitted its proposed jury instructions listing this second requirement—

16  that the Defendant committed the current offense after a conviction of him under the

17  statute had become final—as an element that should be decided by the jury.

18          While the government is not aware of binding precedent holding that this specific

19  provision of 21 U.S.C. § 333(a) is an element, there is binding precedent that the alternate

20  requirement to prove the defendant's "intent to defraud or mislead" is an element.  *See*

21  *United States v. Watkins*, 278 F.3d 961, 964 (9th Cir. 2002) (intent to defraud or mislead

22  is "an additional mens rea element that is absent from the broader-reaching misdemeanor

23  provision"); *United States v. Geborde*, 278 F.3d 926, 929 (9th Cir. 2002) (the jury "found

24  the intent to defraud or mislead"); *United States v. Smith*, 714 F. App'x 701, 704 (9th Cir.

25  2017) (district court did not err in instructing the jury to consider whether defendant

26  "acted with the intent to defraud or mislead when he introduced MMS products into

27  interstate commerce"—an "accurate statement of the law and consistent with the charged

28  statutes"); *United States v. Xin He*, 405 F. App'x 220, 221 (9th Cir. 2010) (in an appeal

TRIAL BRIEF
*United States v. Marschall - 7*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   from a trial, rejecting defendant's sufficiency challenge, treating § 333(a)(2)'s *mens rea*

2   prong as an element, and finding the trial evidence sufficient to "lead a rational fact

3   finder to conclude beyond a reasonable doubt that [defendant] had the requisite intent to

4   defraud or mislead in connection with offering a misbranded drug for sale").  Section

5   333(a)(2) separates the "intent to defraud or mislead" element from the previous

6   conviction requirement with only a comma and "or," thus indicating that the "intent to

7   defraud or mislead" element and the previous conviction requirement share the same

8   purpose in the statutory scheme and are alternative ways to prove the crime occurred.

9   Consequently, because the "intent to defraud or mislead" requirement is an element to be

10  decided by the jury, it appears the previous conviction requirement is as well.  Out of an

11  abundance of caution, and to ensure that the jury make all necessary findings, the

12  government's proposed jury instructions include the previous conviction requirement as

13  an element that the jury must find to convict.

14  **B.    Expert Witnesses**

15      The government expects to introduce testimony from an expert witness, whose

16  identity and testimony have been disclosed to defense counsel.  Specifically, Dr. Arthur

17  Simone will provide testimony, including:

18  (1) Medical expertise is required to diagnose COVID-19, viral infections, parasitic

19      infections, methicillin-resistant Staphylococcus aureus (MRSA).

20  (2) Medical expertise is needed to determine the most appropriate course of

21      therapy for patients with these conditions.

22  (3) The use of a product to treat COVID-19, not under the supervision of a

23      licensed practitioner, poses risks to the individual user, for example, use of the

24      product by patients with the disease can permit the disease to progress while

25      delaying potentially lifesaving treatment.

26  (4) The use of a product to treat COVID-19, not under the supervision of a

27      licensed practitioner, poses risks to the public, for example, use of the product

28      by patients during a pandemic gives users a false impression that they need not

TRIAL BRIEF
*United States v. Marschall* - 8

rigorously adhere to interventions such as social distancing, use of protective

equipment, self-quarantining after exposure, and other good hygienic practices.

The Court has already ruled on a motion *in limine* regarding Dr. Simone's testimony and has deemed these opinions admissible.  Dkt. 114.

This testimony is admissible pursuant to Federal Rule of Evidence 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto."  The decision to admit expert testimony "is committed to the discretion of the [trial] court and will not be disturbed [on appeal] unless manifestly erroneous."  *United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir. 1988).

To the extent that an expert's testimony is based upon information obtained other than through personal observation, it is permissible if it is based upon information of the type reasonably relied upon by experts in forming expert opinions.  *See United States v. Wright*, 215 F.3d 1020 (9th Cir. 2000) (holding that expert testimony regarding DNA testimony satisfied the Supreme Court's *Daubert* standard for the admissibility of scientific evidence); *United States v. Golden*, 532 F.2d 1244 (9th Cir. 1976) (holding it proper to admit DEA agent's testimony about market value of methamphetamine where that testimony was based in part upon information obtained from other undercover agents, because such information is of the type reasonably relied upon by experts determining prevailing prices in clandestine markets).

In contrast, the defense has indicated that it may call an expert witness to testify that "the two supplements, referred to as the Dynamic Duo, help to boost the immune system and that a strong immune system helps decrease negative outcomes associated with viruses."  The government has filed a motion *in limine* to exclude this testimony as improperly disclosed under Rule 16(b)(1)(C), and irrelevant and inadmissible under Rules 402 and 403, and under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 590 (1993).

TRIAL BRIEF
*United States v. Marschall* - 9

**C.      Statements of the Defendant**

The government intends to offer into evidence excerpts of the Defendant's Facebook posts, written materials, and recorded telephone conversations.  Such statements by a defendant are not hearsay when offered by the government against the speaker.  Fed. R. Evid. 801(d)(2).  However, the converse is not true; a defendant is not entitled to admit any of his own out-of-court statements.  An out-of-court statement of a declarant offered by the declarant on his own behalf is inadmissible hearsay because, among other things, it is not a statement by a party-opponent.  *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *see also Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-serving statements because such statements "are exactly the ones which people are most likely to make even when they are false").

The government may offer a transcript of the audio recording it introduces into evidence to the jury as a listening aid.  The government will shortly be providing the transcripts to defense counsel.  The Ninth Circuit has held that it is not an abuse of discretion for a court to allow jurors to view transcripts of recordings as listening aids where a participant in the conversation testifies that the transcripts are accurate, jurors are not permitted to look at the transcripts until the recordings are played, the transcripts are not admitted into evidence, and the district court instructs jurors that only the recordings are evidence and that, in the event of a discrepancy between the recording and the transcript the recording controls.  *United States v. Booker*, 952 F.2d 247, 249 (9th Cir. 1991).

In this case, the government has provided copies of the transcript that it intends to use to the witnesses through whom the government intends to play recordings, and those persons will testify that the transcript is accurate.  Before transcripts are distributed to the jury, the Court should read Model Ninth Circuit Jury Instruction 2.7, and, before subsequent recordings are played, the Court should remind the jury that only the recordings are evidence and that, if there are any discrepancies between recordings and

TRIAL BRIEF
*United States v. Marschall* - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  transcripts, recordings control.  *Id.*  In addition, if defense counsel disputes the accuracy

2  of the transcripts, the Court should review any disputed portions for accuracy.  *See id.* at

3  248; *see also United States* v. *Turner*, 528 F.2d 143 (9th Cir. 1975) (permitting jurors to

4  use transcripts again when jurors requested that tape recordings be replayed during their

5  deliberation).

6  **D.    Other Out-of-Court Statements Offered for Non-Hearsay Purposes**

7        "Hearsay is a statement, other than one made by the declarant while testifying at

8  the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R.

9  Evid. 801(c).  The admission of hearsay into evidence is generally proscribed by Rule

10  802.  When it is relevant that an out of court statement was made, however, and the

11  statement is offered exclusively to prove that it was made, it is not hearsay and is

12  therefore admissible.  *See Williams v. United States*, 458 U.S. 279 (1982).  That is

13  because statements not offered for their truth are not hearsay.  Fed. R. Evid. 801(c).

14        In certain instances, the government may offer out-of-court statements not to

15  prove the truth of the matters asserted, but merely to explain information possessed by,

16  and the subsequent actions of, the investigative agents, law enforcement officers, and

17  other witnesses.  For example, this case was initiated after witnesses conveyed

18  information to law enforcement officers regarding statements made by the Defendant and

19  his wife.  Because these statements will not be offered for the truth of the matter asserted,

20  the statements would not constitute hearsay as defined by Rule 801(c).  *See United States*

21  *v. Mitchell*, 502 F.3d 931, 969 (9th Cir. 2007) (no error in allowing investigator testify

22  about out-of-court statements from an informant that caused him to go to a certain

23  location); *United States v. Munoz*, 233 F.3d 1117, 1134 (9th Cir. 2000) (no error in

24  allowing attorney to testify about out-of-court conversations with Michigan State

25  investigators that caused him to send letter requesting that investment company sales

26  personnel suspend investment sales); *United States v. Brown*, 923 F.2d 109, 111 (8th Cir.

27  1991) (out-of-court statement is not hearsay if offered for the limited purpose of

28  explaining why a police investigation was undertaken); *United States v. Lowe*, 767 F.2d

TRIAL BRIEF
*United States v. Marschall* - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1052, 1063-64 (4th Cir. 1985) (finding agent's testimony regarding information he received from third party was not hearsay since it was offered to explain the preparations agents took in anticipation of the accused's arrest).  Similarly, law enforcement agents who investigated the case may testify about statements made to them by these initial tipsters during the course of the investigation.  These statements will not be introduced for their truth, but rather to explain why the investigating agents took subsequent action.

**E.      Cross-Examination of the Defendant**

A defendant who testifies at his trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during cross-examination.  A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence.  *United State v. Miranda Uriarte,* 649 F.2d 1345, 1353-54 (9th Cir. 1981).

**F.      Evidence of the Defendant's Character**

In general, Federal Rule of Evidence 404(a) prohibits the introduction of character evidence to prove that a person acted in accordance with that character.  Rule 404(a)(2)(A), however, creates an exception for criminal defendants: "in a criminal case . . . a defendant may offer evidence of the defendant's pertinent trait."  Thus, if the Defendant can show that evidence of a certain trait is relevant, he might be able to present evidence that he has that trait.  Fed. R. Evid. 404(2)(A); *see United States v. Franco*, CR-16-00268-001-TUC-CKJ (EJM), 2017 WL 11466629, at *1 (D. Ariz. Sept. 7, 2017) quoting *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982) (pertinent means relevant).

If the Defendant could show that such character evidence was relevant, Federal Rule of Evidence 405 further limits the form in which such evidence can be presented.  "When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion."  Fed. R. Evid. 405.  Such reputation or opinion evidence contrasts with evidence of specific instances of conduct.  *Compare* Fed. R. Evid. 405(a) *with* Fed. R. Evid. 405(b).  A defendant can introduce such specific-instance evidence about himself only when "a

TRIAL BRIEF
*United States v. Marschall* - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

person's character or character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b).  To meet this requirement, the Defendant must show that "proof, or failure of proof, of the character trait by itself actually satisf[ies] an element of the charge, claim, or defense." *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995). Here, the Defendant cannot prove that character is an essential element of the charged crime and cannot overcome this bar.  Thus, he is limited to presenting character evidence only in the form of reputation or opinion evidence.

Reputation evidence consists of a witness's testimony about the defendant's reputation in the community for having the pertinent trait.  As the Supreme Court explained, the witness presenting character evidence via testimony about reputation is "allowed to summarize what he has heard in the community" but "may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits." *Michelson v. United States*, 335 U.S. 469, 477 (1948).  Before speaking about such a reputation, the witness must establish that he or she is familiar with the person's reputation and can "speak with authority of the terms in which [the subject] generally is regarded." *United States v. Bedonie*, 913 F.2d 782, 802 (10th Cir. 1990).  A witness providing an opinion about a defendant's character also must have a basis for that opinion. *See United States v. Cortez*, 935 F.2d 135, 139 (8th Cir. 1991) citing *United States v. Dotson*, 799 F.2d 189, 192–93 (5th Cir.1986).

The Defendant, therefore, can introduce character evidence only if it is relevant and if he does so through testimony about a well-founded opinion or about the Defendant's reputation.  While the government cannot be the first to introduce character evidence, the government is not subject to the same limitations as to form once the Defendant makes character an issue.  In particular, the government can cross-examine character witnesses with evidence of specific incidents.  "On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct." Fed. R. Evid. 405.  In addition, the government can offer its own evidence, such as rebuttal witnesses, to refute reputation and opinion testimony about the

TRIAL BRIEF
*United States v. Marschall* - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Defendant's character.  Fed R. Evid. 404(a)(2)(A) ("if the evidence is admitted, the

2  prosecutor may offer evidence to rebut it").

3  **G.    Business Records**

4          The government has presented defense counsel with a stipulation regarding the

5  authenticity of various records obtained from Facebook.  If no stipulation is reached, the

6  government will introduce business records obtained from Facebook at trial through two

7  means.  First, records from Facebook will be offered pursuant to a certification made by a

8  competent custodian under Fed. R. Evid. 902(11).  Copies of the records themselves, as

9  well as the Rule 902(11) certification, have been provided to defense counsel, who have

10 to date raised no objection to the admission of these materials.  Second, Facebook

11 postings will also be offered through live witnesses, including Special Agent Angela

12 Zigler, Karen Hogan, and Steve Koehler.  Such testimony is sufficient to meet the

13 authenticity requirements because these individuals viewed these posts firsthand and

14 independently saved them.

15 **H.    Certified Public Records**

16         The government intends to introduce public records, including court filings, and

17 has sought the defense's stipulation to the admissibility of those exhibits. To the extent

18 the parties cannot reach an agreement, these records will be introduced as authentic

19 pursuant to Federal Rule of Evidence 902(4).  In addition, the records either are not

20 hearsay or are exceptions to the prohibition on hearsay.  Under Rule 902(4), certified

21 copies of public records are self-authenticating.  Such documents include copies "of an

22 official record—or a copy of a document that was recorded or filed in a public office as

23 authorized by law—if the copy is certified as correct by . . . the custodian or another

24 person authorized to make the certification." Fed. R. Evid. 902(4)(A).  Pursuant to this

25 rule, the government intends to authenticate certified copies of court records and

26 government agency records.

27         These records also are admissible under the hearsay rules.  Some are not hearsay

28 pursuant to Federal Rule of Evidence 801(d)(2).  This Rule provides that an out-of-court

TRIAL BRIEF
*United States v. Marschall* - 14

statement is not hearsay if "the statement is offered against an opposing party and . . . was made by the party in an individual . . . capacity." *Id.* The government intends to admit plea agreements and agency decisions that were signed by the Defendant, and as such, they are the Defendant's statements and admissible.

Other certified public records are admissible under the public records exception to the prohibition on hearsay. Rule 803(8) provides that "a record or statement of a public office [that] sets out . . . the office's activities" is "not excluded by the rule against hearsay, regardless of whether the declarant is available." The government intends to admit two records under this exception: certified copies of Judgments entered by the U.S. District Court for the Western District of Washington. These documents are records of a public office—this Court—and set out the Court's activities. There is no reason to doubt the trustworthiness of these documents, and they are admissible at trial.

## I.     Exclusion of Witnesses

Pursuant to Rule 615 of the Federal Rules of Evidence, the government requests that witnesses be excluded from the courtroom, with the exception of Special Agent Angela Zigler, who is the case agent. *United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989).

## J.     Statements of Agents and Unindicted Co-Conspirators

Pursuant to Federal Rule of Evidence 801(d)(2)(D) and 801(d)(2)(E), statements made by agents and co-conspirators of the Defendant are not hearsay. In this case, the government will demonstrate that Rose Marschall, the Defendant's wife, served as his agent and unindicted co-conspirator. For example, on March 4, 2020, Rose Marschall posted an image of a document titled "BE PREPARED," on Facebook. This document was authored by her husband and listed his name—"by Rick Marschall, Health Coach." Similarly, in March 2020, Rose Marschall posted that she "ha[d] been selling g one of the most preventive nom'toxic treatment st a vastly reduced cost to protect myself and those smart enough to understand the words 'zBe Prepated.'" Additionally, on March 21,

TRIAL BRIEF
*United States v. Marschall* - 15

2020, Rose Marschall posted "The Dynamic Duo knocked out my very bad cough/cold in February.  Corona?  Want Info?" and then listed the Defendant's phone number.

As the Defendant's agent, Rose Marschall's statements may be admitted if they were made "on a matter within the scope of that [agent] relationship and while it existed." Fed. R. Evid. 801(d)(2)(D).  Accordingly, her statements peddling the Dynamic Duo products, suggesting treatments for COVID-19, or otherwise addressing the COVID-19 pandemic are admissible non-hearsay.  It does not matter whether the Defendant expressly authorized Rose Marschall to make the particular statements posted on Facebook, so long as they were made as part of her agency relationship.  *United States v. Bonds*, 608 F.3d 495, 502 (9th Cir. 2010).  In evaluating whether an agency relationship exists, the Court is authorized to examine the contents of the agent's statements.  *Id*. at 504.

Additionally, as an unindicted co-conspirator, Rose Marschall's statements may be admitted as non-hearsay.  Fed. R. Evid. 801(d)(2)(E) provides that statements "made by the party's coconspirator during and in furtherance of the conspiracy" are admissible as non-hearsay.  *See also United States v. Weiner*, 578 F.2d 757, 768 (9th Cir. 1978).  Conspiracy need not be charged in the indictment for co-conspirator statements to be admissible.  *See, e.g.*, *id.*; *United States v. Lutz*, 621 F.2d 940, 947 (9th Cir. 1980) (coconspirator statements by participants in a fraud scheme made during the perpetration of the fraud were admissible even though they were not charged with conspiracy because there was independent evidence that they were members of a common plan).  So long as there is evidence establishing that the two conspired to commit the charged offense, such statements are admissible.

**K.    Demonstrative Exhibits**

The government might use demonstrative exhibits at trial. If it chooses to do so, such exhibits can be shown to the jury pursuant to Federal Rule of Evidence 611. Rule 611, addressing the Mode and Order of the Interrogation of Witnesses, gives the Court great discretion in what a witness may use during testimony so as to "(1) make the

TRIAL BRIEF
*United States v. Marschall* - 16

presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time." Fed. R. Evid. 611(a); *see United States v. Gardner*, 611 F.2d 770,776 (9th Cir. 1980) (summary chart admissible in tax evasion case under Rule 611(a)); *United States v. Paulino*, 935 F.2d 739, 752-54 (6th Cir. 1991) (testimony of non-expert summary witness regarding cash generated from cocaine sales in drug conspiracy case admissible under Rule 611(a) where trial court gave limiting instruction and defense had full opportunity to cross-examine); *United States v. Scales*, 594 F.2d 558, 563-64 (6th Cir. 1979) (summaries of testimonial evidence designed "to aid the jury in its examination of the evidence already admitted" do not come within Rule 1006, but are authorized by Rule 611(a)); *see also* 5 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence, at ¶ 1006[03] (summary "prepared by a witness from his own knowledge to assist the jury in understanding or remembering a mass of details is admissible, not under Rule 1006, but under such general principles of good sense as are embodied in Rule 611(a)"). The substantive content must be authenticated, but that may be done by the summary witness, if the witness has reviewed the underlying evidence. Fed. R. Evid. 901; *United States v. Soulard*, 730 F.2d 1291, 1299 (9th Cir. 1984). Moreover, Rule 1006 allows for the summaries of voluminous materials to be admissible and used as substantive evidence, rather than solely as demonstrative evidence. *See United States v. Meyers*, 847 F.2d 1408, 1411 12 (9th Cir. 1988) (admitting summary of otherwise admissible evidence as substantive evidence where the summary contributed to the clarity of the presentation). These exhibits will be produced to defense counsel in advance of trial and all underlying documents have been produced in discovery.

**L. Stipulations**

The government has proposed two stipulations to the defense. One relates to the admissibility of the plea agreements in the Defendant's two previous federal criminal cases. The other relates to the authentication of certified and business records. The defense is considering these stipulations, and if the parties enter into any stipulations, we will file them before trial and seek to introduce them at the appropriate time.

TRIAL BRIEF
*United States v. Marschall* - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# IV.   POSSIBLE DEFENSES

The Defendant has provided notice that he intends to pursue an entrapment by estoppel defense.  The government may provide further briefing regarding the inadmissibility of this defense in advance of, or during, trial.  At this point, the government is attempting to reach an agreement with the defense regarding this evidence and will file a motion *in limine* if no such agreement is reached.

In short, the government does not believe that the Defendant can satisfy the elements establishing entrapment by estoppel.  In order to invoke an entrapment by estoppel defense, the Defendant must show that:

> (1) an authorized government official, empowered to render the claimed erroneous advice, (2) who has been made aware of all the relevant historical facts, (3) affirmatively told [the defendant] the proscribed conduct was permissible, (4) that [the defendant] relied on the false information, and (5) that [the] reliance was reasonable.

*United States v. Batterjee*, 361 F.3d 1210, 1216 (9th Cir. 2004).  The Defendant's "reliance is [only] reasonable if a person sincerely desirous of obeying the law would have accepted the information as true, and would not have been put on notice to make further inquiries."  *Id*. at 1216-17.

The Defendant's proposed defense fails because he cannot show at least two of these elements, (1) that a federal official was aware of all the relevant facts and (2) affirmatively told the Defendant that his actions were legal.  The Defendant neither advised the federal government that he was selling a purported COVID-19 cure nor was the Defendant told that selling the Dynamic Duo products was legal.  As the cases cited in the Defendant's prior motion *in limine* demonstrate, it is not sufficient for a defendant to simply rely on a federal official's vague or general advice made without knowledge of a defendant's specific illegal conduct.  Dkt. 98.  Rather, for an entrapment by estoppel defense to apply, a federal official must affirmatively tell a defendant that a specific course of action is permissible.

TRIAL BRIEF
*United States v. Marschall* - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

For example, in *Raley v. Ohio*, 360 U.S. 423, 425-26 (1959), the Court permitted an entrapment by estoppel defense, vacating the defendants' convictions for refusal to answer questions posed by the Ohio Un-American Activities Committee. In permitting this defense, the Court noted that, immediately prior to their refusal, the Commission expressly informed the defendants of their privilege against self-incrimination. *Id.* Similarly, in *Cox v. Louisiana*, 379 U.S. 559, 572 (1965), the Court permitted an entrapment by estoppel defense, vacating a conviction for picketing near a Louisiana court, noting that, immediately prior, a police officer had informed the defendant that picketing at that location was legal. Additionally, in *United States v. Pennsylvania Indus. Chem. Corp.*, 411 U.S. 665, 673 (1973), the Court vacated a conviction for discharging pollutants after the Corps of Engineers told the defendants that the specific discharge would not violate the law. In *United States v. Tallmadge*, 829 F.2d 767, 774 (9th Cir. 1987), the Ninth Circuit also permitted an entrapment by estoppel defense, vacating a conviction for felon in possession of a firearm after a federal firearms dealer expressly told the defendant that his prior felony did not bar his ability to purchase a gun. Finally, in *Batterjee*, 361 F.3d at 1216-17, the Ninth Circuit vacated a firearms conviction after a federal firearms dealer told the defendant that his immigration status did not bar his gun purchase.

The Defendant cannot establish entrapment by estoppel because he did not advise a federal government official of all of the relevant facts related to the *charged crime* before he committed it and no federal official affirmatively told him, after reviewing those facts, that the *conduct charged* was lawful. Unlike the defendants in the above-cited cases, the Defendant never approached the government, disclosing his proposal to sell the Dynamic Duo products or explaining his intent to sell an unapproved drug. And unlike the defendants in the above-cited cases, no federal official advised the Defendant, after reviewing his sales proposal, that selling the Dynamic Duo products was legal. Instead, the government was wholly unaware of the Defendant's offenses until he had

TRIAL BRIEF
*United States v. Marschall* - 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

already begun selling his purported COVID-19 cure in 2020.  Nothing in the Defendant's two prior plea agreements, entered into in 2011 and 2017, alters these conclusions.

The Defendant has not provided notice of any other defense for which the Federal Rules of Criminal Procedure require notice.  Therefore, the government would move to bar any such defense if it were raised during trial.

## V.    RECIPROCAL DISCOVERY

To date, the government has provided over 800 pages of discovery to the defense. Since the inception of this prosecution, the United States has made available for the defense review all of the items of evidence, whether intended to be used as trial exhibits or not, over which the government has control or custody.  The United States has not received any reciprocal discovery from the defense and will seek to exclude any offered during the course of trial that should have been provided previously, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

## VI.    MOTIONS IN *LIMINE*

Aside from the aforementioned entrapment by estoppel issue, the United States has fully briefed all expected legal issues in advance of trial and does not have any further motions *in limine*.

TRIAL BRIEF
*United States v. Marschall* - 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# VII.   CONCLUSION

The government is not aware of other legal issues that are likely to arise during the course of this trial.  If other issues do arise, the government will address those issues by way of a supplemental brief or briefs.


DATED July 19, 2021.

TESSA M. GORMAN
Acting United States Attorney

*/s/ Marie M. Dalton*
MARIE M. DALTON
NICHOLAS MANHEIM
Assistant United States Attorneys
United States Attorney's Office

TRIAL BRIEF
*United States v. Marschall* - 21

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2021, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to the attorney of record for the defendant.

*s/ Marwa Hirmendi*
MARWA HIRMENDI
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-4750
FAX:   (206) 553-0882
E-mail: marwa.hirmendi@usdoj.gov

TRIAL BRIEF
*United States v. Marschall* - 22

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970