The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD MARSCHALL,<br><br>Defendant. | NO. CR20-5270 BHS<br><br>**GOVERNMENT'S TRIAL BRIEF** |

The United States of America, by and through Tessa M. Gorman, Acting United States Attorney for the Western District of Washington, and Nicholas Manheim and Michelle Jensen, Assistant United States Attorneys, respectfully submits this Trial Brief. Trial is scheduled to begin on October 18, 2021.

## I.  SUMMARY OF THE CASE

### A.  The Defendant's Background

Defendant Richard Marschall is a former naturopathic physician (N.D.) who was twice convicted in this District of Introduction of a Misbranded Drug into Interstate Commerce.

GOVERNMENT'S TRIAL BRIEF - 1
*United States v. Marschall*, CR20-5270 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In 2011, the Defendant admitted that he distributed Human Chorionic Gonadtropin (HCG), a drug approved to treat infertility, as a weight loss drug.[1] In committing that offense, the Defendant imported HCG from India and then provided the drug to patients with whom he had only consulted over the telephone. When questioned regarding the importation of HCG, the Defendant lied to an FDA official, claiming he was an endocrinologist and used HCG to treat infertile patients.[2]

After this conviction, the Defendant's naturopathy license was suspended by the Washington Department of Health.

In 2017, the Defendant was again convicted of Introduction of Misbranded Drugs into Interstate Commerce. Despite his prior conviction, the Defendant again sold HCG to approximately sixty patients to promote weight loss.[3]

After the second conviction, the Washington Department of Health permanently revoked the Defendant's credential as a naturopathic physician. In April 2018, the Defendant and the Washington State Department of Health entered into an Agreed Order and Judgment in the Thurston County Superior Court that permanently enjoined the Defendant from practicing naturopathic medicine and representing himself to be a naturopath—including by using the titles "'Doctor', 'ND', 'naturopath', or any similar title."[4] The permanent injunction explicitly prohibited the Defendant from engaging in the "administration, dispensing, and use, . . . of nutrition and food science . . . [and] naturopathic medicines."

---

[1] *See United States v. Marschall*, CR 11-5222 BHS (W.D. Wa. 2011), ECF No. 7, Plea Agreement at 4-6.

[2] As addressed further below, under 21 U.S.C. § 333(a)(2), there are two ways to prove the felony crime of Introduction of Misbranded Drugs into Interstate Commerce. One is by introducing a misbranded drug into interstate commerce with "an intent to defraud or mislead," and the other is to do so (regardless of such an intent) after a previous conviction under the same statute. 21 U.S.C. § 333(a)(2). In 2011, the Defendant admitted that he committed the crime with an intent to defraud or mislead; he is currently charged with introducing misbranded drugs into interstate commerce after having previously been convicted of the same crime. *See* Dkt. 38.

[3] *See United States v. Marschall*, CR 17-5226 RBL (W.D. Wa. 2017), ECF No. 8, Plea Agreement at 4-5.

[4] *Washington State Department of Health v. Richard A. Marschall*, No. 18-2-00809-34, (Wa. Sup. Ct. 2018), Agreed Upon Order and Judgment

GOVERNMENT'S TRIAL BRIEF- 2
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In October 2018, the Defendant and the State of Washington Department of Health's Board of Naturopathy stipulated and agreed that the Defendant's "credential to practice as a naturopathic physician in the state of Washington [was] permanently revoked with no right to reapply."[5] The stipulated order referred to the April 2018 injunction and repeated that the Defendant was permanently enjoined from "using the initials 'ND', the title 'doctor' or 'naturopath', of [sic] any other similar title."

**B.    The Defendant Distributed the Dynamic Duo to Treat, Prevent, and Cure COVID-19 and Other Diseases**

Beginning in March 2020, as COVID-19 was spreading globally and throughout Washington State, the Defendant again introduced misbranded drugs into interstate commerce. Despite having his naturopathy credential revoked, the Defendant, identified as "Rick Marschall N.D. retired," posted on Facebook that he had a product, which he called the "Dynamic Duo," that could treat or cure COVID-19, MRSA, and other viruses and medical conditions. In one Facebook post, the Defendant claimed that the products comprising the Dynamic Duo, specifically Allimed (garlic extract) and IAG Arabinogalactans (larch tree starch), could "*prevent or treat* viral, bacterial, fungal, and parasitic infections." (emphasis added). The Defendant also claimed that these two products:

> [C]an boost the immune system so it can fight for you but *even more importantly* while your immune system is being strengthened, *can crush*, 30 different viral infections including those in the Corona family like in China, 40 different bacterial infections, 25 different fungal infections and 20 different parasitic infections like amoeba.

(emphasis added).

The Defendant's wife also posted claims on her Facebook account about the Dynamic Duo, instructing people to call her husband about the product. In response to the

---

[5] *In the Matter of Richard A. Marschall, Credential No. NATU.NT.00000532*, No. M2017-857, Stipulated Findings of Fact, Conclusions of Law and Agreed Order, available at https://fortress.wa.gov/doh/providercredentialsearch/PDF/1975420875.pdf.

GOVERNMENT'S TRIAL BRIEF- 3
*United States v. Marschall*, CR20-5270 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

various Facebook posts, concerned citizens contacted the U.S. Attorney's Office in March 2020, complaining that the Defendant was peddling an unproven COVID-19 treatment despite having had his naturopathy license revoked.

In response to these complaints, the FDA began an investigation, and on March 30, 2020, an undercover FDA agent spoke over the telephone with the Defendant and recorded the call. On the call, the Defendant introduced himself as "Dr. Rick Marschall" and advised the undercover agent that the Dynamic Duo products could prevent, cure, or treat COVID-19. Specifically, the Defendant told the agent: "Allicin doesn't boost the immune system, *it just kills the virus*." (emphasis added). The Defendant explained:

> You buy it and you leave and you walk away … You know if you have evidence that you're getting sick how does it show up? …. You know its its ah the cough keeps coming on right? *Or your temperature goes up, in this case with the Covid.* With the regular flu your temperature might not go up very fast. *With this one it seems to go up faster.* And the cough, and *then this this new virus this you know it's hitting people.* It's going right to their right to their lungs and you know deep in their lungs. It's not like you know just bronchitis its pneumonia. You know it's killing people quickly.

(emphasis added). Immediately after describing the deadly nature of COVID-19, the Defendant then stated "here's what I can do," proceeding to sell the undercover agent the Dynamic Duo products. In doing so, the Defendant claimed that "unfortunately, because everybody wants the stuff, you know, there's—there's a bit of a wait."

The following day, the Defendant called the undercover agent back, advising her that he was able to obtain the Dynamic Duo products. In response, the agent purchased these products for $140 plus shipping. The Defendant shipped the products in interstate commerce, from Port Angeles, Washington to the undercover agent in Oakland, California. In addition to the bottles, the package also contained several written statements by the Defendant, including a document titled "BE PREPARED," which again claimed that the products "can crush 30 different viral infections, including those in the Corona family, (like in China Corona-19), 40 different bacterial infections, 25 different fungal infections and 20 different parasitic infections like amoebas." The package also contained a document

GOVERNMENT'S TRIAL BRIEF- 4
*United States v. Marschall*, CR20-5270 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

titled "The Dynamic Duo Instructions," noting that the products were "For Treatment Only," and advising the user to take them "at the VERY FIRST SIGN of flu or cold like symptoms," including "a cough, a sneeze, a sore throat, a runny nose that is NOT allergy related." (emphasis added).

On several of the documents accompanying the pills, the Defendant listed his name as "Rick Marschall, N.D." For example, he listed this name and title on the documents entitled "The Dynamic Duo Instructions," and "Preparing for Viral Infections with Plant Medicines Since Antibiotics Can't Help: Introducing the 'Dynamic Duo.'" Additionally, the Defendant listed his name as "Rick Marschall ND" on an email sent to the undercover agent on March 31, 2020.

The government continued to investigate the Defendant but could not determine how much of the Dynamic Duo the Defendant had sold or how much money he had made from the product.

The government did, however, move quickly to stop the Defendant, charging him on April 29, 2020, by complaint with Introduction of Misbranded Drugs into Interstate Commerce, in violation of 21 U.S.C. §§ 331(a) and 333(a)(2). Dkt. 1.

In June 2020, the parties participated in a preliminary hearing before a magistrate judge, who found that there was probable cause to support the Complaint. Dkt. 36.

On August 5, 2020, an Indictment was filed, charging the Defendant with the same offense, alleging that the Dynamic Duo products were drugs and were misbranded in four different ways. Dkt. 38.

On August 2, 2021, the trial in this case began, and on August 9, 2021, Judge Bryan declared a mistrial when 10 jurors voted to convict and two voted to acquit. Dkt. 185. The case was then reassigned to The Honorable Benjamin H. Settle and set for retrial on October 18, 2021. Dkt. 192. [6]

---

[6] In the upcoming trial, the government intends to present largely the same case that it did in the first trial with the addition of a few witnesses and exhibits.

GOVERNMENT'S TRIAL BRIEF- 5
*United States v. Marschall*, CR20-5270 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II. ELEMENTS OF THE OFFENSE

### A. Introduction of Misbranded Drugs into Interstate Commerce

In Count One, the Defendant is charged with Introduction of Misbranded Drugs into Interstate Commerce, in violation of Title 21, United States Code Sections 331(a) and 333(a)(2). The Court already ruled on the elements of the crime, which are as follows:

(1) the Defendant introduced or caused the introduction of the Dynamic Duo products into interstate commerce;

(2) the Dynamic Duo products were drugs;

(3) the Dynamic Duo products were misbranded; and

(4) the Defendant committed the offense after a previous conviction of him under Title 21, Section 333 had become final.

Dkt. 186 (Court's Instructions to the Jury) at 18; *see also* 21 U.S.C. §§ 331(a), 333(a)(2).

To prove that the Defendant misbranded the Dynamic Duo products, the government will show:

1) The labeling of the Dynamic Duo products was false or misleading in some particular, in that it suggested that the defendant was a naturopathic doctor by listing him as "Rick Marschall N.D.";

2) The Dynamic Duo products were not included in any list of drugs that were manufactured, prepared, propagated, compounded or processed in a registered establishment; and

3) The Dynamic Duo products were prescription drugs—because the drugs' method of use, and the collateral means necessary for their use, rendered them not safe for use except under the supervision of a licensed practitioner— and they were dispensed without a prescription.

GOVERNMENT'S TRIAL BRIEF- 6
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Dkt. 186 at 21. To convict the Defendant, the government needs to prove beyond a reasonable doubt only one of these misbranding methods. *Id*.[7]

### III.  LEGAL ISSUES

**A.  Elements of Charged Offense**

The Defendant is charged with one count of Introduction of Misbranded Drugs into Interstate Commerce in violation of 21 U.S.C. § 331(a) and 333(a)(2). Section 331(a) prohibits "the introduction or delivery for introduction into interstate commerce of any . . . drug . . . that is . . . misbranded." Section 333(a) establishes two tiers of penalties for such misbranding, a misdemeanor offense in § 333(a)(1) and a felony offense in § 333(a)(2). For a person to be convicted of the felony offense, he must commit the acts prohibited under § 331(a) and also meet one of two other requirements. Either the person must violate § 331(a) with "the intent to defraud or mislead," or the person must violate § 331(a) "after a conviction of him under this section has become final." Here, the Defendant is charged under the second of these requirements because he has twice been convicted of committing the same crime, first in 2011 and again in 2017. At the first trial, defense counsel agreed that the previous conviction requirement is an element of the crime, and the Court reached the same conclusion, instructing the jury that it was an element. Consistent with the Court's instructions from the first trial, the government has submitted proposed jury instructions that include this element—that the Defendant committed the current offense after a previous final conviction under the statute—for decision by the jury.

The defense has moved to bifurcate the previous conviction element (Dkt. 206), and the government opposes that motion. The Court rejected such bifurcation at the first trial, and the bifurcation of elements in a single offense is not supported by precedent. The government's opposition to the defense motion will address this issue in more detail.

//

---

[7] The Indictment charged other methods for proving misbranding, but, for simplicity at trial, the government intends only to prove these three methods.

GOVERNMENT'S TRIAL BRIEF- 7
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

B. **Expert Witnesses**

The government expects to introduce testimony from three expert witnesses, whose identity and testimony have been disclosed to defense counsel. The first is Dr. Arthur Simone, who testified at the first trial and will provide testimony on the same topics, including:

(1) Medical expertise is required to diagnose COVID-19, viral infections, parasitic infections, methicillin-resistant Staphylococcus aureus (MRSA).

(2) Medical expertise is needed to determine the most appropriate course of therapy for patients with these conditions.

(3) The use of a product to treat COVID-19, not under the supervision of a licensed practitioner, poses risks to the individual user, for example, use of the product by patients with the disease can permit the disease to progress while delaying potentially lifesaving treatment.

(4) The use of a product to treat COVID-19, not under the supervision of a licensed practitioner, poses risks to the public, for example, use of the product by patients during a pandemic gives users a false impression that they need not rigorously adhere to interventions such as social distancing, use of protective equipment, self-quarantining after exposure, and other good hygienic practices.

The Court has already ruled on a motion *in limine* regarding Dr. Simone's testimony and has deemed these opinions admissible. Dkt. 114.

The second expert is Dr. Enrique Yanes Santos. Dr. Santos is a chemist with the FDA who tested the contents of the two bottles sent by the Defendant to SA Ryer. Dr. Santos will testify about his background, receiving and opening the two bottles, the contents of the bottles, his liquid chromatography-mass spectrometry procedures and analysis, and his conclusions about the products, specifically that he did not identify any active pharmaceutical ingredients in the substances and did find three components consistent with an organic compound.

GOVERNMENT'S TRIAL BRIEF- 8
*United States v. Marschall*, CR20-5270 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The third expert is Anissa Caroline Machal Kelley. Ms. Kelley is a chemist with the FDA who also tested the contents of the two bottles sent by the Defendant to SA Ryer. Ms. Kelley will testify about her background, the contents of the bottles, her gas chromatography-mass spectrometry procedures and analysis, and her conclusions about the products, specifically that she was not able to identify any compounds in the products, including any active pharmaceutical ingredients or poisons.

The testimony from these three experts is admissible pursuant to Federal Rule of Evidence 702, which provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto." The decision to admit expert testimony "is committed to the discretion of the [trial] court and will not be disturbed [on appeal] unless manifestly erroneous." *United States v. Kinsey*, 843 F.2d 383, 388 (9th Cir. 1988).

To the extent that an expert's testimony is based upon information obtained other than through personal observation, it is permissible if it is based upon information of the type reasonably relied upon by experts in forming expert opinions. *See United States v. Wright*, 215 F.3d 1020 (9th Cir. 2000) (holding that expert testimony regarding DNA testimony satisfied the Supreme Court's *Daubert* standard for the admissibility of scientific evidence); *United States v. Golden*, 532 F.2d 1244 (9th Cir. 1976) (holding it proper to admit DEA agent's testimony about market value of methamphetamine where that testimony was based in part upon information obtained from other undercover agents, because such information is of the type reasonably relied upon by experts determining prevailing prices in clandestine markets).

### C. Statements of the Defendant

The government intends to offer into evidence excerpts of the Defendant's Facebook posts, written materials, and recorded telephone conversations. Such statements by a defendant are not hearsay when offered by the government against the speaker. Fed. R. Evid. 801(d)(2). However, the converse is not true; a defendant is not entitled to admit

GOVERNMENT'S TRIAL BRIEF- 9
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

any of his own out-of-court statements. An out-of-court statement of a declarant offered by the declarant on his own behalf is inadmissible hearsay because, among other things, it is not a statement by a party-opponent. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000); *see also Williamson v. United States*, 512 U.S. 594, 600 (1994) (the hearsay rule excludes self-serving statements because such statements "are exactly the ones which people are most likely to make even when they are false").

The government may offer a transcript of the audio recording it introduces into evidence to the jury as a listening aid, just as the government did in the first trial. The Ninth Circuit has held that it is not an abuse of discretion for a court to allow jurors to view transcripts of recordings as listening aids where a participant in the conversation testifies that the transcripts are accurate, jurors are not permitted to look at the transcripts until the recordings are played, the transcripts are not admitted into evidence, and the district court instructs jurors that only the recordings are evidence and that, in the event of a discrepancy between the recording and the transcript the recording controls. *United States v. Booker*, 952 F.2d 247, 249 (9th Cir. 1991).

In this case, the government provided copies of the transcripts that it intends to use to the witness through whom the government intends to play the recordings, and at the initial trial, that witness testified that the transcripts are accurate. Before transcripts are distributed to the jury, the Court should read Model Ninth Circuit Jury Instruction 2.7, and, before subsequent recordings are played, the Court should remind the jury that only the recordings are evidence and that, if there are any discrepancies between recordings and transcripts, recordings control. *Id.* In the initial trial, defense counsel did not dispute the accuracy of the transcripts, and if it does so in the retrial, the Court should review any disputed portions for accuracy. *See id.* at 248; *see also United States v. Turner*, 528 F.2d 143 (9th Cir. 1975) (permitting jurors to use transcripts again when jurors requested that tape recordings be replayed during their deliberation).

GOVERNMENT'S TRIAL BRIEF- 10
*United States v. Marschall*, CR20-5270 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**D.     Cross-Examination of the Defendant**

A defendant who testifies at his trial may be cross-examined as to all matters reasonably related to the issues he puts in dispute during cross-examination. A defendant has no right to avoid cross-examination on matters which call into question his claim of innocence. *United State v. Miranda Uriarte,* 649 F.2d 1345, 1353-54 (9th Cir. 1981).

**E.     Evidence of the Defendant's Character**

In general, Federal Rule of Evidence 404(a) prohibits the introduction of character evidence to prove that a person acted in accordance with that character. Rule 404(a)(2)(A), however, creates a narrow exception for criminal defendants: "in a criminal case . . . a defendant may offer evidence of the defendant's *pertinent* trait." (emphasis added). Thus, before the Defendant can introduce character evidence, he must show that evidence of that specific trait is relevant. Fed. R. Evid. 404(2)(A); *see United States v. Franco*, CR-16-00268-001-TUC-CKJ (EJM), 2017 WL 11466629, at *1 (D. Ariz. Sept. 7, 2017) quoting *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982) (pertinent means relevant).

If the Defendant is allowed to introduce character evidence, Federal Rule of Evidence 405 further limits the form in which such evidence can be presented. "When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion." Fed. R. Evid. 405. Such reputation or opinion evidence contrasts with evidence of specific instances of conduct. *Compare* Fed. R. Evid. 405(a) *with* Fed. R. Evid. 405(b). A defendant cannot introduce such specific-instance evidence about himself unless his "character or character trait is an essential element of a charge, claim, or defense." Fed. R. Evid. 405(b). To meet this requirement, the Defendant must show that "proof, or failure of proof, of the character trait by itself actually satisf[ies] an element of the charge, claim, or defense." *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995). Here, the Defendant cannot prove that character is an essential element of the charged crime and cannot overcome this bar. Thus, in the unlikely event the Defendant is allowed to introduce character evidence, he is limited to presenting character evidence only in the form of reputation or opinion evidence.

GOVERNMENT'S TRIAL BRIEF- 11
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Reputation evidence consists of a witness's testimony about the defendant's reputation in the community for having the pertinent trait. As the Supreme Court explained, the witness presenting character evidence via testimony about reputation is "allowed to summarize what he has heard in the community" but "may not testify about defendant's specific acts or courses of conduct or his possession of a particular disposition or of benign mental and moral traits." *Michelson v. United States*, 335 U.S. 469, 477 (1948). Before speaking about such a reputation, the witness must establish that he or she is familiar with the person's reputation and can "speak with authority of the terms in which [the subject] generally is regarded." *United States v. Bedonie*, 913 F.2d 782, 802 (10th Cir. 1990). A witness providing an opinion about a defendant's character also must have a basis for that opinion. *See United States v. Cortez*, 935 F.2d 135, 139 (8th Cir. 1991) citing *United States v. Dotson*, 799 F.2d 189, 192–93 (5th Cir.1986).

The Defendant, therefore, can introduce character evidence only if it is relevant and if he does so through testimony about a well-founded opinion or about the Defendant's reputation. While the government cannot be the first to introduce character evidence, the government is not subject to the same limitations as to form once the Defendant makes character an issue. In particular, the government can cross-examine character witnesses with evidence of specific incidents. "On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct." Fed. R. Evid. 405. In addition, the government can offer its own evidence, such as rebuttal witnesses, to refute reputation and opinion testimony about the Defendant's character. Fed R. Evid. 404(a)(2)(A) ("if the evidence is admitted, the prosecutor may offer evidence to rebut it").

### F. Business Records

The government intends to admit certain business records. It plans to authenticate those records through certifications that comply with Fed. R. Evid. 902(11). Just as it did at the initial trial, the government will introduce business records obtained from Facebook using a certification made by a competent custodian under Fed. R. Evid. 902(11). In

GOVERNMENT'S TRIAL BRIEF- 12
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

addition, the government will introduce—and authenticate using a 902(11) certification—Wells Fargo bank and credit card records for the Defendant's business showing that he charged customers' credit cards. Copies of the Facebook and Wells Fargo records themselves, as well as the Rule 902(11) certifications, have been provided to defense counsel, who have to date raised no objection to the use of 902(11) certifications to authenticate these materials.

The government also intends to introduce invoices from the Defendant's business to show that he made additional sales of the Dynamic Duo. Even though the defense produced these records to the government and designated them as a defense exhibit at the first trial, the defense has indicated it likely will object to the authenticity of those records. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In this instance, the government claims the invoices were from the Defendant's business and show sales of the Dynamic Duo. This is clear when considering "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 902(b) (examples of ways to establish authenticity). The invoices that the government intends to introduce have such distinctive characteristics, especially when considered with other circumstances. First, the invoices are identical in form to the one sent by the Defendant to SA Ryer. The invoices have the same header, including the name of Defendant's company—Natural Healing Clinic—and the same address, phone number, fax number, and website (www.drrickmarschall.com). The invoice sent to SA Ryer, and those to be introduced have the same title ("Sales Receipt"), and the same spaces to include the date, sale number, buyer's address, shipping address, shipment description, price, and other information, including the same slogan at the bottom of the invoice. In addition to having the same appearance and distinctive characteristics, other circumstances also confirm the invoices' authenticity. In particular, the government received the invoices from the defense, and the defense designated the invoices as the Defendant's own exhibit, which

GOVERNMENT'S TRIAL BRIEF- 13
*United States v. Marschall*, CR20-5270 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

it described as "Richard Marschall Dynamic Duo Invoices." Dkt. 130 at 6. In addition, one of the invoices corresponds to the sale of the Dynamic Duo to a witness the defense called in the first trial and who testified that he had purchased the product from the Defendant. Finally, the dates and prices on the invoices match the credit card records produced by Wells Fargo. Thus, the invoices are the Defendant's authentic business records and should be admitted at trial.

### G. Certified Public Records

The government intends to introduce public records, including court and agency filings, as it did at the first trial. These records were introduced as authentic pursuant to Federal Rule of Evidence 902(4). In addition, the records either are not hearsay or are exceptions to the prohibition on hearsay. Under Rule 902(4), certified copies of public records are self-authenticating. Such documents include copies "of an official record—or a copy of a document that was recorded or filed in a public office as authorized by law—if the copy is certified as correct by . . . the custodian or another person authorized to make the certification." Fed. R. Evid. 902(4)(A). Pursuant to this rule, the government intends to authenticate certified copies of court records and government agency records.

These records also are admissible under the hearsay rules. Some are not hearsay pursuant to Federal Rule of Evidence 801(d)(2). This Rule provides that an out-of-court statement is not hearsay if "the statement is offered against an opposing party and . . . was made by the party in an individual . . . capacity." *Id*. The government intends to admit a court order and agency decision that were signed by the Defendant, and as such, they are the Defendant's statements and admissible.

Other certified public records are admissible under the public records exception to the prohibition on hearsay. Rule 803(8) provides that "a record or statement of a public office [that] sets out . . . the office's activities" is "not excluded by the rule against hearsay, regardless of whether the declarant is available." The government intends to admit two records under this exception: certified copies of a court order and of an agency decision. These documents are records of public offices—the Superior Court for Thurston County

GOVERNMENT'S TRIAL BRIEF- 14
*United States v. Marschall*, CR20-5270 BHS

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and the Washington State Board of Naturopathy—and set out the offices' activities. There is no reason to doubt the trustworthiness of these documents, and they are admissible at trial.

## H. Exclusion of Witnesses

Pursuant to Rule 615 of the Federal Rules of Evidence, the government requests that witnesses be excluded from the courtroom, with the exception of Special Agent Angela Zigler, who is the case agent. *United States v. Thomas*, 835 F.2d 219, 222-23 (9th Cir. 1987); *see also United States v. Machor*, 879 F.2d 945, 953-54 (1st Cir. 1989).

## I. Demonstrative Exhibits

The government might use demonstrative exhibits at trial. If it chooses to do so, such exhibits can be shown to the jury pursuant to Federal Rule of Evidence 611. Rule 611, addressing the Mode and Order of the Interrogation of Witnesses, gives the Court great discretion in what a witness may use during testimony so as to "(1) make the presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time." Fed. R. Evid. 611(a); *see United States v. Gardner*, 611 F.2d 770,776 (9th Cir. 1980) (summary chart admissible in tax evasion case under Rule 611(a)); *United States v. Paulino*, 935 F.2d 739, 752-54 (6th Cir. 1991) (testimony of non-expert summary witness regarding cash generated from cocaine sales in drug conspiracy case admissible under Rule 611(a) where trial court gave limiting instruction and defense had full opportunity to cross-examine); *United States v. Scales*, 594 F.2d 558, 563-64 (6th Cir. 1979) (summaries of testimonial evidence designed "to aid the jury in its examination of the evidence already admitted" do not come within Rule 1006, but are authorized by Rule 611(a)); *see also* 5 Jack B. Weinstein and Margaret A. Berger, Weinstein's Evidence, at ¶ 1006[03] (summary "prepared by a witness from his own knowledge to assist the jury in understanding or remembering a mass of details is admissible, not under Rule 1006, but under such general principles of good sense as are embodied in Rule 611(a)"). The substantive content must be authenticated, but that may be done by the summary witness, if the witness has reviewed the underlying evidence. Fed. R. Evid. 901; *United States v. Soulard*, 730 F.2d 1291, 1299

GOVERNMENT'S TRIAL BRIEF- 15
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

(9th Cir. 1984). Moreover, Rule 1006 allows for the summaries of voluminous materials to be admissible and used as substantive evidence, rather than solely as demonstrative evidence. *See United States v. Meyers*, 847 F.2d 1408, 1411 12 (9th Cir. 1988) (admitting summary of otherwise admissible evidence as substantive evidence where the summary contributed to the clarity of the presentation). These exhibits will be produced to defense counsel in advance of trial and all underlying documents have been produced in discovery.

**J.   Stipulations**

The government and defense have entered into a stipulation that the Defendant was convicted of Introducing Misbranded Drugs into Interstate Commerce in 2011 and 2017. This stipulation was admitted in the first trial. Trial Exhibit 30 (Dkt. 193). It establishes one of the elements beyond a reasonable doubt, specifically that the Defendant was previously convicted of Introducing Misbranded Drugs in Interstate Commerce and that those convictions were final at the time he committed the current offense. The government will offer the same stipulation at the retrial.

### IV.   POSSIBLE DEFENSES

The Defendant has indicated that he might pursue a number of the defenses he raised before and during the first trial. In addition, the Defendant recently filed five pretrial motions: 1) seeking dismissal of the indictment on the grounds this is a purely speech-based prosecution; 2) seeking dismissal of the indictment for failure to include a definition of "dietary supplement" and related request for disclosure of grand jury information; 3) requesting a jury instruction on "dietary supplement"; 4) seeking dismissal of one of the types of misbranding with which the Defendant has been charged, specifically the labelling representations that he is a naturopathic doctor; and 5) seeking bifurcation of the prior conviction element of the offense. Dkt. 206. The vast majority of these issues were already decided by Judge Bryan in the first trial, and the government has moved the Court to confirm those rulings are now law of the case. Dkt. 198. The government opposes the Defendant's renewed motions and will be filing its opposition shortly.

GOVERNMENT'S TRIAL BRIEF- 16
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    The Defendant also has filed a motion to dismiss for vindictive prosecution. *See*
2 Dkt. 208. The Defendant's claim for vindictive prosecution is focused on the government's
3 original charging decision. *See id.* The government will file an opposition to that motion
4 and expects the Court will be able to decide it as a matter of law prior to trial. *See* Rule
5 12(b)(3)(A)(iv) (requiring vindictive prosecution defenses be raised by motion prior to
6 trial) and 12(d) (providing "[t]he court must decide every pretrial motion before trial unless
7 it finds good cause to defer a ruling"). In any event, as claims of vindictive prosecution are
8 decided by the Court and "may not be presented to a jury[,]" no argument or evidence
9 related to this claim should be permitted at trial. *United States v. Yagman,* 345 F. Appx.
10 312, 314 (9th Cir. 2009).

11   Before the first trial in this case, the Defendant provided notice that he intended to
12 pursue an entrapment by estoppel defense. The parties submitted extensive briefing on the
13 defense. *See* Dkt. 98, 103, 136, 142, 151, 158. Judge Bryan indicated he would exclude
14 evidence of entrapment by estoppel as irrelevant, and that order is now law of the case.
15 Dkt. 151. The Defendant has not provided notice that he intends to raise this defense at the
16 retrial.

17   The Defendant has not provided notice of any other defense for which the Federal
18 Rules of Criminal Procedure require notice. Therefore, the government would move to bar
19 any such defense if it were raised during trial.

## V. RECIPROCAL DISCOVERY

21   To date, the government has provided over 3,000 pages of discovery to the defense.
22 Since the inception of this prosecution, the United States has made available for the defense
23 review all of the items of evidence, whether intended to be used as trial exhibits or not,
24 over which the government has control or custody. In the weeks before the first trial, the
25 United States received a small amount of reciprocal discovery from the defense. The
26 United States has not received any discovery since the first trial. To the extent the defense
27 does not produce discovery as required by the Federal Rules of Criminal Procedure, the

GOVERNMENT'S TRIAL BRIEF- 17
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

government will seek to exclude such evidence offered during the course of trial, pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

## VI. MOTIONS *IN LIMINE*

The government anticipates filing two motions *in limine*. One will request a ruling on the admissibility of the credit card records and invoices described above. The second motion will request an order excluding any mention of the first trial or the result of that trial. The government will file those motions by the deadline for motions *in limine*.

## VII. CONCLUSION

The government is not aware of other legal issues that are likely to arise during the course of this trial. If other issues do arise, the government will address them in court or by way of a supplemental brief or briefs.

DATED: October 4, 2021.

TESSA M. GORMAN
Acting United States Attorney

*/s/ Nicholas Manheim*
NICHOLAS MANHEIM
MICHELLE JENSEN
Assistant United States Attorneys
United States Attorney's Office

GOVERNMENT'S TRIAL BRIEF- 18
*United States v. Marschall, CR20-5270 BHS*

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970