1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE BENJAMIN H. SETTLE

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR20-5270-BHS |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DEFENDANT'S TRIAL BRIEF |
| | ) | |
| RICHARD MARSCHALL, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant Richard Marschall, through Assistant Federal Public Defenders
Mohammad Ali Hamoudi and Gregory Geist, respectfully submits this Trial Brief.[1] The
government's prosecution of Richard Marschall is unprecedented on many levels.
Despite the government's protests to the contrary, it has entered into the realm of using
its prosecutorial powers and the threat of imprisonment to prohibit Mr. Marschall from
speaking truthfully about dietary supplements. The government has engaged a
campaign to place a prior restraint on Mr. Marschall's ability to speak truthfully about
dietary supplements and participate in the debate over health care.

The government, in its closing argument at the first trial, claimed that "(i)f a
person sells a product to treat and prevent a disease, that product is considered a drug."
Ex. 1 (Jury Trial Transcript, August 5, 2021) at 51. In doing so, the government not
only attempts to chill Mr. Marschall's speech but to chill the speech of all those in the

---

[1] To the extent the defense has not responded to some of the government's motions in
limine or other claims, such as bifurcation, it is first necessary to learn how the Court
rules on those and other matters.

United States of America who ship items in the mail or otherwise transfer items through the chains of interstate commerce. In its rebuttal, the government even said that "(t)his case is not about garlic, and it is not about tree starch, and it is not about any other herb or any other plant or any other botanical. This case is about what [Mr. Marschall] promised his products would do." Ex. 1 at 92.

The government's message, through this prosecution, is clear: if you speak on issues of public health, even truthfully, and that speech conflicts with a government bureaucrat's idea of the truth, then you will be investigated, prosecuted, and imprisoned. At the very top of its closing argument at the first trial, the government even told the jurors that "whether [garlic and larch starch] could actually do what [Mr. Marschall] said it could do" was irrelevant. Ex. 1 at 44. The government, in its closing, also conceded that garlic and larch starch "might even help to boost the immune system." Ex. 1 at 45. The government discussed Mr. Marschall's state of mind ("He knew where the line was…(t)he defendant knew what he was doing…(h)e knew the rules.") (Ex. 1 at 60-61) and his perceived thoughts (He "knew exactly what the definition of a drug was.") (Ex. 1 at 53). In doing so, the government likely commented on his right to remain silent. Mr. Marschall will object to such contentions at the upcoming trial.

This trial is not just about Mr. Marschall but it is also about the rights of Americans to speak truthfully on matters of controversy, public importance, and health. Through its prosecution of Mr. Marschall, the government seeks to crush that right and send Mr. Marschall to prison for exercising his First Amendment rights. In fact, the government has claimed that one's words have the ability to turn items such as holy water or a rock into drugs.

The government's position threatens a variety of protected rights. A mother may still ship chicken soup to a child with the promise that it will cure a cold but must hope

DEFENDANT'S TRIAL BRIEF
(*United States v. Marschall*; CR20-5270-BHS) - 2

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA  98402**
**(253) 593-6710**

1    that the government does not find out. A grandparent may ship a bicycle to a grandchild

2    with the promise that it will make them healthier and avoid disease, but must hope that

3    the government does not find out. A religious advisor may ship a religious text to a

4    member with the promise that praying with it may help cure or mitigate a disease, but

5    must hope that the government does not find out. It is the government's position that

6    any article, or anything perceived by the senses, can be turned into a drug through

7    protected speech.

8         Perhaps, that is why the government did not bother opening the bottles of dietary

9    supplements until after the Court declared a mistrial. To the government, it was

10   irrelevant if there was something – or even nothing at all – inside the bottles. In its

11   rebuttal, the government claimed that a "drug is any article. Doesn't matter what it is. It

12   can be an apple, it can be garlic, it can be tree starch, it can be marbles, as the defendant

13   suggested. Any article that is intended to be used to prevent or treat disease." Ex. 1 at

14   98. A drug can be "anything." Ex. 1 at

15        At the heart of this case are garlic and larch starch, which were sold in the form

16   of dietary supplements. At this trial, just as in the previous trial, not one witness will

17   testify that they believed that garlic and larch starch were going to end the

18   COVID-19 pandemic, much less prevent them from contracting the virus. In fact, Mr.

19   Marschall told his customers to listen to what the authorities dictated and to follow the

20   suggestions of conventional science. He told his customers to see their traditional

21   medical doctors.

22        But, in the government's view, Mr. Marschall's speech became criminal when

23   he suggested that garlic and larch starch could "crush" coronaviruses, like COVID-19,

24   or could help keep a strong immune system to help prevent negative consequences from

25   illness. The government will repeatedly claim that this meant that Mr. Marschall touted

26   the dietary supplements as a COVID-19 cure. The government's intent to criminalize

DEFENDANT'S TRIAL BRIEF
(*United States v. Marschall*; CR20-5270-BHS) - 3

1    Mr. Marschall's speech is made clear in its second trial brief, an intent which was

2    realized at his first trial. Dkt. 210, p. 3-5.

3         Yet, the government will not be able to produce one witness who will claim that

4    they believed the supplements were a cure. The government will not produce one

5    witness to testify that they relied on garlic and larch starch to protect them in lieu of

6    traditional medical advice, social distancing, or wearing masks. The government will

7    not produce one witness to testify that Richard Marschall diagnosed any disease or

8    infection. The government will not produce one witness to testify that Mr. Marschall

9    prevented them from seeking treatment under the supervision of a licensed practitioner.

10   The government will not produce one witness to testify they had a false impression that

11   garlic and larch starch were alternatives to social distancing, the use of protective

12   equipment, or self-quarantining after exposure. Additionally, the government has been

13   and will be unable to present any witness to testify that they were misled by the "N.D."

14   designation. Yet, the government claimed that it acted quickly so no one would be hurt.

15        That the government did not produce any of these witnesses at the first trial,

16   clearly demonstrated that the case is totally targeted at Mr. Marschall's speech and

17   likely caused the Honorable Robert J. Bryan to conclude that the indictment was a bad

18   one. Unless the government is able to produce such a witness, the testimony of Dr.

19   Arthur Simone is purely speculative and irrelevant.

20        The government's prosecution is also unprecedented because, while it claims

21   that the offense is one of strict liability, it has and will encourage the jury to convict Mr.

22   Marschall based on his knowledge and state of mind. On one hand, the government will

23   claim that Mr. Marschall's subjective knowledge is entirely irrelevant. But, on the other

24   hand, the government has and will tell the jurors that Mr. Marschall knew what he was

25   doing was wrong.

26

DEFENDANT'S TRIAL BRIEF
(*United States v. Marschall*; CR20-5270-BHS) - 4

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA  98402**
**(253) 593-6710**

This is the government "two-step." Ex. 1 at 52, 53, 57, 61. The government made claims and promises about how it would proceed with its trial but then used Mr. Marschall's speech and alleged subjective knowledge to try to get a conviction. The government "leaped clear over line" and then "tried to dance [its] claims back." Ex. 1 at 52. Mr. Marschall wonders if the government's "little dance was no mistake" and if the government will repeat it during the retrial. Ex. 1 at 53.

The government's two-step continues when it will again weaponize Mr. Marschall's prior convictions against him. The government's intent to do this is made clear in its second trial brief. Dkt. 210, p. 1-2. Rather than discuss the merits of the case, it discusses licensing and a criminal background dating back several years. *Id*.

Despite promising that it was simply an element of the offense – an element that the defense actually stipulated to – the government used it in an improper manner at the prior trial. For example, in its rebuttal argument, the government discussed the "story of this case" by claiming that Mr. Marschall "has been through this before. He knew the rules. He chose to break those rules." Ex. 1 at 85, 86. The government essentially said that Mr. Marschall has done this before and now he has done it again. This an improper use of prior convictions, especially when the government claimed that the prior convictions were just an element of the offense.

The government's presentation at trial will be at odds with the claims it has made since the inception of the case – except for the complaint, which did actually contain a *mens rea* element. The government has and will say the case is about one thing but, when the trial actually starts, will turn it into something else. Mr. Marschall does not know what this "something else" will be. The government has misbranded its case in a manner that has misled Mr. Marschall and leaves him wondering what he will need to defend against at the upcoming trial. For example, will the government use the

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA  98402**
**(253) 593-6710**

statements of Mr. Marschall's wife, Rose Marschall, to prove its case? If so, the defense objects to the use of her Facebook posts or any other statements.

Will the government use Dr. Simone to testify beyond the matters that he testified at the prior trial? The government claims that it will not but if it attempts to go beyond those limits, the defense will object.

The government has identified two experts in its trial brief that intend to testify that the contents did not include "active pharmaceutical ingredients or poisons." Dkt. 210, p. 8-9. The government tells the Court that one of these experts will testify that he did find "three components consistent with an organic compound." *Id*. What is the organic compound?

Also, will the government, again, elicit testimony about the personal lives and situations of its witnesses, including the FDA agents, in March 2020? If so, the defense objects because it is irrelevant. But if the government puts those issues into play, again, then the personal lives of the government witnesses should be opened up for cross examination. Will the government use other invoices, not subjects of the indictment, during its case? If so, how will the government use that evidence?

The government intends to offer Mr. Marschall's stipulation about his priors into evidence. Mr. Marschall objects because he has moved to bifurcate the trial. He requests that the stipulation and the limiting instruction be readdressed after the Court decides whether it intends to bifurcate the prior conviction. In the event the Court does not bifurcate, Mr. Marschall will stipulate to a single conviction not both because the statute speaks to a single conviction not multiple convictions, "…if any person commits such *a violation* after *a conviction* of him under this section has become final." 21 U.S.C. Sec. 333(a)(2) (emphasis added). That single conviction should not be the conviction in 2017 because the plea agreement in that case lacked the necessary *mens rea,* intent to defraud or mislead, contained in the 2011 conviction.

DEFENDANT'S TRIAL BRIEF
(*United States v. Marschall*; CR20-5270-BHS) - 6

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA  98402**
**(253) 593-6710**

1      Should the Court deny Mr. Marschall's bifurcation (it should, given the

2  government's conduct at the first trial), a stipulation specifying that Mr. Marschall was

3  convicted in 2011 may be appropriate. Even that stipulation needs to include the truth

4  that the 2011 conviction involved human chorionic gonadotropin (HCG), a hormone

5  that is regulated as a drug by the Food and Drug Administration. The inclusion of truth

6  is necessary because the current case does not involve any drug registered with the

7  FDA. The Court should bifurcate the priors and make this case about what it is: what

8  happened in March 2020 and not what happened in 2017 or 2011.

9      As to the defense, the Court did not rule that it would not allow Mr. Marschall to

10  present an entrapment by estoppel defense. Mr. Marschall simply decided not to put on

11  witnesses to develop facts that were presented to the Court in a pretrial motion, facts

12  that the government did not dispute, facts the Court relied on to issue an order. Mr.

13  Marschall has endeavored to identify potential defenses that are provided for in his

14  preliminary jury instructions. These instructions are drafted based on facts that were

15  admitted at the previous trial.

16      Ultimately, it is difficult for the defense to label and identify the issues that may

17  arise during the trial. This is due to the government shifting its claims about what

18  evidence it will elicit and how it will use the evidence. The government claims that it

19  has produced 3,000 pages of discovery to Mr. Marschall. Again, that statement lacks

20  context. The government informed the Court that it intended to retry Mr. Marschall on

21  September 15, 2021. The government informed Mr. Marschall on September 20, 2021

22  that it intended to seek a superseding indictment against him. The government informed

23  Mr. Marschall and the Court that it did not intend to seek a superseding indictment

24  against Mr. Marschall but still intended to call new witnesses and admit new exhibits.

25  Since September 29, 2021, Mr. Marschall has received approximately 1,800 pages of

26  the discovery that the government states that it has disclosed to the defense.

DEFENDANT'S TRIAL BRIEF
(*United States v. Marschall*; CR20-5270-BHS) - 7

**FEDERAL PUBLIC DEFENDER**
**1331 Broadway, Suite 400**
**Tacoma, WA  98402**
**(253) 593-6710**

1    DATED this 7th day of October 2021.

2                                    Respectfully submitted,

3                                    s/ *Mohammad Hamoudi*
4                                    s/ *Gregory Geist*
                                     Assistant Federal Public Defenders
5                                    Attorneys for Richard Marschall

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S TRIAL BRIEF
(*United States v. Marschall*; CR20-5270-BHS) - 8