1

2

3

4

5

6

7

8

9

10

11

12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

                              Plaintiff,

        v.

RICHARD MARSCHALL,

                              Defendant.

CASE NO. CR20-5270 BHS

ORDER

13    This matter comes before the Court on limited remand from the Ninth Circuit to

14  enable the Court "to state, orally or in writing, the reasons for its order denying

15  appellant's motion for bail pending appeal." Order, *United States v. Marschall*, No. 22-

16  30048 (9th Cir. Apr. 18, 2022) (quoting Fed. R. App. P. 9(b); and citing 18 U.S.C.

17  § 3143(b); *United States v. Wheeler*, 795 F.2d 839, 841 (9th Cir. 1986)); *see also* Dkt.

18  298.

19    Under 18 U.S.C. § 3143(b),

20    [A] judicial officer shall order that a person who has been found guilty of
      an offense and is sentenced to a term of imprisonment, and who has filed an
21    appeal . . . be detained, unless the judicial officer finds—

22

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . . ; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

    (i) reversal,

    (ii) an order for a new trial,

    (iii) a sentence that does not include a term of imprisonment, or

    (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

A question is substantial if it is "of more substance than would be necessary to a finding that it was not frivolous." *United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir. 2003) (internal quotations omitted). The defendant has the burden to prove he is entitled to bail pending appeal. *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985).

While there is no suggestion that Marschall poses a flight risk, the Court cannot confidently say that he would not pose a danger to the safety of any other person or the community if he were released. This is Marschall's third conviction under the same statute, and while it is a nonviolent crime, it is a serious one.[1] In terms of his most recent conviction, Marschall sold a purported cure for serious ailments such as MRSA and COVID-19 in the midst of the COVID-19 pandemic.

---

[1] The Government presented evidence in its sentencing memorandum that Marschall continued to prescribe drugs and use the designation N.D. during and even after his trial in this case, despite his convictions and the revocation of his naturopathic license. Dkt. 279 at 11; Dkt. 281. While the Court did not take this evidence into consideration at sentencing, it is directly relevant to the determination whether Marschall has met his burden to show by clear and convincing evidence that he does not pose a danger to the community.

The Court recognizes, however, that given Marschall's relatively brief sentence, he will soon be released and may pose a danger to the community. Nevertheless, the Court does not believe that Marschall can raise a substantial question likely to result in a reversal, a new trial, a sentence not including a term of imprisonment, or a sentence less than time served plus the expected duration of the appeal. Marschall was sentenced at the low end of the guideline range, and his arguments regarding the constitutionality of the underlying statute, the legitimacy of his prosecution, and the jury instructions have all been addressed, most of them more than once, by two different judges.[2]

Marschall has repeatedly argued that the indictment is faulty because it failed to allege a *mens rea* element. *See* Dkt. 76 (Motion to Dismiss); Dkt. 206 (Motion for Miscellaneous Relief). He now again seeks to advance that argument, claiming that his prosecution violated the Supreme Court's holding in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and the Ninth Circuit's holdings in *United States v. Watkins*, 278 F.3d 961 (9th Cir. 2002), and *United States v. Kaplan*, 836 F.3d 1199 (9th Cir. 2016), because it did not contain a *mens rea* element. Dkt. 298 at 13.

Marschall was indicted, prosecuted, and convicted under 21 U.S.C. § 331(a) which prohibits "[t]he introduction or delivery for introduction into interstate commerce of any . . . drug . . . that is adulterated or misbranded." That crime is converted to a felony and carries a maximum term of imprisonment of three years if the person "commits such a violation after a conviction of him under this section has become final, or commits such

---

[2] This case was previously assigned to the Honorable Robert J. Bryan. The case was reassigned to the undersigned after the first trial ended in a mistrial. *See* Dkts. 185, 192.

a violation with the intent to defraud or mislead . . . ." *Id.* at § 333(a)(2). In Marschall's

two prior convictions, the Government charged him with misbranding drugs with the

intent to defraud or mislead. Dkt. 298 at 3. In the instant case, the Government charged

Marschall with misbranding drugs after being previously convicted of misbranding drugs.

*See* Dkt. 38 at 5.

In *Rehaif*, the Supreme Court examined a conviction for unlawful possession of a

firearm. The crime in that case, like the misbranding crime, is split between a "prohibited

act" statute and a "penalty provision" statute. The penalty provision contained a

"knowingly" *mens rea* element, which provides that if a person knowingly violates 18

U.S.C. § 922(g), that person can be fined or imprisoned for a maximum of 10 years, or

both. 18 U.S.C. § 924(a)(2). A violation of § 922(g) required both that the person have a

certain status, such as being "illegally or unlawfully in the United States," *and* that the

person transport a firearm or ammunition in interstate commerce. 18 U.S.C. § 922(g).

The Supreme Court held that the "knowingly" *mens rea* element in the penalty provision

applied to both requirements of § 922(g), i.e., the defendant had to know both that he was

illegally in the United States and that he transported a firearm in interstate commerce. *See*

*Rehaif*, 139 S. Ct. at 2198–99. The focus in that case was on Congress' intent and the

presumption of scienter in the absence of clear Congressional intent. *See id.* at 2195.

The misbranding statutory scheme is notably different. While it also has both a

prohibited act statute and a penalty provision statute, the penalty provision statute

provides two ways in which an act of misbranding can be converted into a felony:

(1) "after a conviction of [the defendant] under [§ 331] has become final," or (2) when

the defendant commits the crime "with the intent to defraud or mislead." 21 U.S.C.

§ 333(a)(2). Here, unlike in *Rehaif*, Congress clearly intended to allow for a felony

conviction without proof of *mens rea* when the defendant has previously been convicted

of misbranding drugs. Marschall also misinterprets *Watkins* and *Kaplan*. In both cases,

the Ninth Circuit examines only the "intent to defraud or mislead" charging option in

§ 333(a)(2), and they are therefore inapplicable to the facts of this case.

    The statute does not require the Government to prove *mens rea*, and it was

therefore proper for the Government not to include a *mens rea* element in the indictment

and for the Court not to instruct the jury on *mens rea*. This argument does not raise a

substantial question for appeal.

    Marschall has also repeatedly argued that the substances he sold are not "drugs"

but are dietary supplements—a claim that the jury had to disagree with to reach a guilty

verdict. *See* Dkt. 45 (Motion to Dismiss); Dkt. 99 (Motion in Limine); Dkt. 206 (Motion

for Miscellaneous Relief). Whether a substance is a drug under the statute depends on its

intended use. While the same product could be considered a food or a dietary supplement

in other contexts, that classification depends on their intended use. The jury in this case

found that Marschall intended to use the substances as drugs—"for use in the diagnosis,

cure, mitigation, treatment, or prevention of disease . . . ." 21 U.S.C. § 321(g)(1). Such a

finding was supported by the evidence presented at trial.

    Post-trial, Marschall challenged the Court's refusal to provide to the jury the full

statutory definition of "drug" or the definitions of "health claim" and "structure/function

claim." Dkt. 271 at 9–13. He also argued that he was entitled to a judgment of acquittal

1    because the Government relied solely on his uncorroborated confession to convict him.

2    *Id.* at 13–15. The Court again fully considered those arguments and denied them. Dkt.

3    275 at 3–5.

4          A review of 21 U.S.C. §§ 321 and 343 clearly shows how confusing and

5    misleading the proposed statutory definitions would be to a jury. The entire statutory

6    definition of "drug" alone refers to four different ways a substance can be considered a

7    drug, a few ways a food or dietary supplement would not be considered a drug, and three

8    other statutory provisions which themselves cite to other statutory provisions and

9    regulations. *See* 21 U.S.C. § 321(g)(1). Further, the types of claims referred to in the

10   statute that would render a food or dietary supplement not a drug are claims either

11   required or approved by the Secretary of Health and Human Services. *See generally* 21

12   U.S.C. §§ 343(q)–(r). That clearly and facially does not apply to this case where

13   Marschall was convicted for misbranding drugs that he claimed could "*crush* 30 different

14   viral infections, including those in the Corona family like in China, 40 different bacterial

15   infections, 25 different fungal infections and 20 different parasitic infections like

16   amoeba." Dkt. 210 at 3 (emphasis in original). He also made claims that one of the

17   products, Allicin, does not just "boost the immune system, *it just kills the virus*." *Id.* at 4

18   (emphasis in original). These are objectively not claims required or approved by the

19   Secretary of Health and Human Services.

20         Marschall's proposed jury instructions, including those for the complete statutory

21   definitions of "drug," "structure/function claims," and "health claims," would have

22

served to confuse and mislead the jury and were irrelevant. They were properly excluded, and that exclusion does not raise a substantial question for appeal.

Marschall argues that he was not provided any notice that he was making "disease claims." Dkt. 298 at 18–20. Such notice is not required. Marschall violated a criminal statute, and the Government enjoys prosecutorial discretion. While the Food and Drug Administration has discretion to warn or notify individuals or entities it believes are violating FDA regulations, the Government is not required to provide an individual notice or an opportunity to cease his unlawful activity before charging him. Marschall was afforded due process and had the opportunity to be heard during both of his trials, and his argument that the Government failed to notify him prior to indicting him does not raise a substantial question for appeal.

Marschall has again repeatedly argued that the underlying statute violates the First Amendment both on its face and as applied to him. *See* Dkt. 44 (Motion to Dismiss); Dkt. 100 (Motion in Limine); Dkt. 206 (Motion for Miscellaneous Relief). Marschall argued that the statute at issue unconstitutionally regulates speech because the intended use of the substance makes it a drug. But the statute regulates conduct in that it forbids the sale of misbranded drugs in interstate commerce. *See* Dkt. 87 at 3. While it is true that whether a substance is a drug depends on its intended use, to be prosecuted under the statute, the individual still must engage in the conduct of misbranding the drug and selling it in interstate commerce.

Marschall argues that his claims about the "Dynamic Duo" were not false or misleading and were substantiated at trial. But Marschall's own sentencing memorandum

proves that is not true. He himself stated that "[n]o one actually believed that garlic and larch starch could cure COVID-19, not even Mr. Marschall." Dkt. 282 at 5. That statement directly contradicts his previous claims that the Dynamic Duo could "crush" COVID-19, along with other serious illnesses.

He also argues that the prosecution did not advance a substantial government interest. Dkt. 298 at 22. The Court again reiterates that Marschall's conduct is serious and not as banal as he suggests. Marschall advertised and sold unauthenticated and unauthorized "cures" for COVID-19 in the midst of a pandemic. While it is possible that the Dynamic Duo may never have directly caused anyone serious health problems, encouraging alternative and unproven treatments for a serious virus that was spreading globally could encourage people to forgo life-saving treatment that could protect them from the effects of the virus and protect others from the spread of the virus.

It is for all of the above stated reasons why the Court denied Marschall bail pending appeal.

**IT IS SO ORDERED.**

Dated this 20th day of April, 2022.

BENJAMIN H. SETTLE
United States District Judge